**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

VICTOR L. RODRIGUEZ,

      Plaintiff,

      v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.

No. 11 C 5139

Magistrate Judge Rowland

## MEMORANDUM OPINION AND ORDER

Plaintiff Victor L. Rodriguez brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Commissioner's denial of his application for disability insurance benefits. For the reasons set forth below, the Court remands this case for further proceedings consistent with this opinion.

## I. Procedural History

On November 27, 2009, Rodriguez filed concurrent applications for disability insurance benefits and supplemental security income. In both applications, Rodriguez alleged disability with an onset date of October 12, 2009 based on diabetes, spinal injuries, and depression/anxiety. The Commissioner initially denied those claims on April 26, 2010, and again upon reconsideration on September 3, 2010. (R. 68, 75). On September 20, 2010, Rodriguez filed a written request for a hearing. After proper notice, on February 10, 2011, an Administrative Law Judge ("ALJ") conducted a hearing.

(R. 84). Rodriguez was represented at that hearing by Nora Cruz, a non-attorney representative. On February 23, 2011, the ALJ issued a written opinion, finding that Rodriguez was not "disabled" under the Social Security Act. Rodriguez then requested Appeals Counsel review, but the request was denied, rending the ALJ's decision final.

Rodriguez then requested judicial review, for which this Court has jurisdiction pursuant to 42 U.S.C. § 405(g). Pursuant to the consent of the parties and 28 U.S.C. § 636(c), the case was reassigned to Magistrate Judge Nolan on October 23, 2011 for all further proceedings, including entry of final judgment. (Dkt. 13). Following Judge Nolan's retirement from the bench, the case was reassigned to Magistrate Judge Rowland on October 1, 2012. (Dkt. 44).

## II. Summary of Administrative Record

Rodriguez was born on May 21, 1962. (R. 137). He suffers from diabetes, which is not well controlled and sleep apnea, which requires a C-Pap to sleep at night. (R. 45, 49, 164). He also has a herniated disk and suffers from depression/anxiety. (R. 165). From 1995 to 2009, Rodriguez worked steadily, with annual income ranging from about $31,000 to $57,000. (R. 131-35). Most of his employment history was with the Chicago Transit Authority ("CTA"), first as a laborer (1987-2001) and then as a bus driver (2001-2009). (R. 143). In October 2009, Rodriguez injured his back at work, while getting off a CTA bus. (R 130, 142). It is unclear if Rodriguez's injury led him to stop working, or if he was let go because drivers were prohibited from operating buses while on

insulin. (R. 43). After working for the CTA, Rodriguez worked briefly at Kmart, but was unable to perform the work. (R. 51). Rodriguez then worked briefly worked as a driver for senior citizens, but was terminated as soon as his employer found out he uses insulin. (R. 52).

Rodriguez stated that he can stand for no more than about a half-an-hour, and sit for no more than 30 minutes. (R. 53). He reports that his back pain causes his right leg to go numb quickly. (R. 46). He states that he can walk for no more than about a block and a half, and that he cannot carry things for long because he loses the strength in his arms. (R. 53).

Rodriguez reports that he is afraid to drive or even walk outside the house alone because his vision gets blurry. (R. 49-50, 154). He states that it is difficult to pay attention or follow instructions. (R. 155). His wife reports that he can attend to his personal care (dress, bathe, care for hair, shave, etc.), but is not able to shop or do chores around the house. (R. 160-61). Due to his diabetes, Rodriguez sometime faints or becomes very weak. (R. 161). He often forgets what he says and repeats himself. (R. 165). Rodriguez attends physical therapy three times a week. (R. 355). The only social activity Rodriguez reports engaging in is going to church. He states that he does not typically watch television or read, because he falls asleep quickly. (R. 54).

By the time of the ALJ's hearing, Rodriguez was estranged from his wife and spending nights at his mother's apartment. (R. 6). Because his mother lives in a subsidized low-income facility, Rodriguez is not allowed to remain in the apartment during the day. He testified that, during the day, he will sit or lie

down in his car or spend time in church. His mom helps him, but she is on Social Security and Rodriquez's father recently passed away. (R. 46).

***Treating physician James Lang, M.D.*** The record includes notes from Rodriguez's treating physician James Lang of PrimeCare. (R. 314-317). Dr. Lang treated Rodriguez from November 2008 until January 2010 for hypertension, diabetes, mild hyperlipidemia (abnormally high concentration of fats or lipids in the blood), migraine headaches, obstructive sleep apnea, and depression. The notes indicate that an MRI of Rodriguez's spine revealed two herniated disks. (R. 317).

***Treating chiropractor Michael Taylor.*** The record also reflects that Rodriguez attended physical therapy with chiropractor Michael Taylor prior to March 3, 2010. Documents for Taylor's office show that Rodriguez was scheduled for a series of lumbar epidural steroid injections to alleviate pain in his back, but was unable to receive them because of his diabetes. (R. 326).

***Treating endocrinologist Sanija Bajramovic, M.D.*** From January 2008 through May 2009, Rodriguez was treated by Dr. Sanija Bajramovic of Endocrine & Diabetes Associates for migraine headaches, type II diabetes, hypertension, hyperlipidemia, sleep apnea, hypothyroidism, sinus allergies, gastroesophageal reflux disease, depression, and a history of cocaine abuse. (R. 225-248). Notes from an April 7, 2008 consultation show that Rodriguez had recently fallen asleep while driving.

***Treating counselor Jose Rodrigo Nino.*** Rodriguez first visited Jose Rodrigo Nino, a licensed clinical therapist, on February 13, 2010. He reported

headaches, trouble sleeping, and depression. (R. 320). He stated at that time that he was unemployed, homeless, and in the process of divorcing his wife. (R. 325). Rodriguez reported that he feared his wife's violent behavior. (R. 325). Nino's notes state: "Client appeared tearful, hopeless and powerless, overwhelmed by circumstances and medical conditions." (R. 325).

***Emergency room visits.*** On October 12, 2009, Rodriguez was transported via the Chicago Fire Department to Rush Medical Center, where he complained of back pain following his fall from a bus at work. (R. 250-51). His final diagnosis was lumbar sprain and strain, unspecified essential hypertension, type II diabetes, unspecified hypothyroidism, and personal history of allergy to narcotic agent. (*Id.*). On January 6, 2010, Rodriguez was admitted to the emergency room at Saint Mary and Elizabeth Medical Center, where he complained of extreme dizziness and thirst. He was diagnosed with uncontrolled hyperglycemia (R. 278, 397-429) and was given insulin (R. 295).

***DDS Examinations.*** The ALJ also considered physical and psychological evaluations prepared by the Illinois Department of Disability Determination Services ("DDS"). Those evaluations were prepared on the basis of the medical records on file with the Social Security Administration. The DDS evaluators did not consult with Rodriguez in person. The DDS's psychiatric evaluation (referred to as a "psychiatric review technique") rated Rodriguez's condition under the following listings: 12.04 Affective Disorders and 12.06 Anxiety-Related Disorders (Diagnosed adjustment disorder with depressed and anxious mood). (R. 330). The evaluator, Michael J. Schneider, Ph.D., assessed Rodriguez's

functional limitations (known as "B criteria"), and found that he has moderate limitation in the following three categories: restriction of activities of daily living; difficulties in maintaining social functioning; difficulties in maintaining concentration, persistence, or pace. Schneider concluded that "C criteria" (which refer to very severe symptoms of mental illness) were not present. (R. 338). The DDS Physical Residual Functional Capacity Assessment, performed by Charles Wabner, concluded that Rodriguez is moderately limited in 5 of 20 categories describing various physical functions and not significantly limited in all other categories. (R. 341-349). Wabner concluded that Rodriguez is mentally capable of performing simple tasks if his diabetes is adequately controlled. (R. 351).

***Consultative examinations.*** The ALJ also considered consultative examinations from Myrtle Mason M.D. (psychiatric examiner) and Charles Carleton M.D. (physical examiner). (R. 353-363). Those doctors reviewed medical records and also examined Rodriguez in-person. Dr. Mason diagnosed Rodriguez as having an "adjustment disorder with depressed and anxious mood," and assigned him a GAF (Global Assessment of Functioning) score of 60.[1] A score of 60 indicates the following: Moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers). American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. Text Rev. 2000). Dr. Carleton diagnosed Rodriguez

---

[1] GAF scores are used by clinicians to gauge an individual's overall level of functioning and his ability to carry out activities of daily living.

with chronic low back pain with left sciatica, degenerative disk disease with disc herniations, hypertension, thyroid disease, migraine headaches, and sleep apnea. Dr. Carleton essentially concluded, following certain diagnostic tests, that Rodriguez's complaints of physical limitations were credible. (R. 362 "Based on history and physical examination today, I believe his claims are credible.").

***Vocational expert.*** Finally, the ALJ considered the opinion testimony of vocational expert ("VE"), Richard Hammersma. (R. 27). Hammersma testified that, given all the functional limitations articulated by the ALJ, a claimant would be able to perform the requirements of representative occupations such as inspector, assembler, and hand packer. Hammersma testified that, in Rodriguez's geographic area, there are 2,000 inspector jobs, 3,000 assembler jobs, and 3,000 hand packager jobs.

Based on the record described above, the ALJ found that Rodriguez is not disabled (as that term is defined in the Social Security Act) and not entitled to benefits.

**III. Standard of Review**

To establish a "disability" under the Social Security Act, a claimant must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A claimant must demonstrate that his impairments prevent him from performing

not only past work, but also any other work that exists in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A).

The regulations under the Social Security Act set forth a five-step process to determine whether a person is disabled. 20 C.F.R. § 404.1520(a)(4). Under these regulations, an ALJ must consider (1) whether the claimant presently has substantial, gainful employment; (2) whether the claimant's alleged impairment or combination of alleged impairments is severe; (3) whether the claimant's impairment(s) meet(s) or equal(s) the specific impairments that are listed in the appendix to the regulations as severe enough to preclude gainful employment; (4) whether the claimant is unable to perform his or her past relevant work; and (5) whether the claimant is unable to perform any other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 404.1520(b)-(f); *see also Young v. Sec'y of Health and Human Serv.*, 957 F.2d 386, 389 (7th Cir. 1992).

A finding of disability requires an affirmative answer at either Step 3 or Step 5. *See* 20 C.F.R. § 404.1520(a)(4). A negative answer at any step other than Step 3 precludes a finding that the claimant is disabled. *Young,* 957 F.2d at 388. The claimant bears the burden of proof at Steps 1-4. In cases of severe impairment, the ALJ's analysis typically involves an evaluation of the claimant's residual functional capacity ("RFC") to perform past relevant work. *See* 20 C.F.R. § 404.1520(e). This RFC is used for purposes of Step 4 to determine whether the claimant may work in a previous occupations. *Id.*

At Step 5, the burden shifts to the Commissioner, who must "provid[e] evidence showing that other work exists in significant numbers in the national economy that [the claimant] can do, given [his] residual functional capacity and vocational factors." 20 C.F.R. § 404.1560(c)(2). If a claimant's RFC allows him to perform jobs that exist in significant numbers in the national economy, then the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1).

In reviewing the ALJ's decision, courts may not decide facts anew, reweigh evidence, or substitute their judgment for the articulated judgment of the ALJ. *Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir. 1994). The reviewing court will uphold the Commissioner's decision if it is supported by "substantial evidence," and is free of legal error. 42 U.S.C. § 405(g) (2004); *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dray v. R.R. Retirement Bd.,* 10 F.3d 1306, 1310 (7th Cir. 1993) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)). If conflicting evidence would allow reasonable minds to differ, the responsibility to determine disability belongs to the Commissioner (and ALJ, by extension), not the courts. *See Heir v. Sullivan,* 912 F.2d 178, 181 (7th Cir. 1990); *see also Stuckey v. Sullivan,* 881 F.2d 506, 509 (7th Cir. 1989) (the ALJ has the authority to assess medical evidence and give greater weight to evidence that the ALJ finds more credible).

However, an ALJ is not entitled to unlimited judicial deference. An ALJ must "build an accurate and logical bridge from the evidence to [his or] her conclusion," *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001), and

"must confront the evidence that does not support his [or her] conclusion and explain why it was rejected." *Indoranto v. Barnhart,* 374 F.3d 470, 474 (7th Cir. 2004). The ALJ must consider all relevant evidence, and may not choose to disregard certain evidence or discuss only the evidence that favors his or her decision. *See Herron,* 19 F.3d at 334. Although the ALJ need not evaluate in writing every piece of evidence in the record, the ALJ must state the reasons he or she accepted or rejected "entire lines of evidence." *Id.* at 333; *see also Young,* 957 F.2d at 393 (in order for there to be a meaningful appellate review, the ALJ must articulate a reason for rejecting evidence "within reasonable limits"). The written decision must include specific reasons that explain the ALJ's decision, so that the reviewing court can ultimately assess whether the determination was supported by substantial evidence or was "patently wrong." *Zurawski v. Halter,* 245 F.3d 881, 887 (7th Cir. 2001) (quoting *Powers v. Apfel,* 207 F.3d 431, 435 (7th Cir. 2000)).

**IV. Discussion**

Rodriguez raises six arguments in support of his request for reversal and remand: the ALJ did not properly assess his difficulties in maintaining concentration, persistence, or pace; the ALJ failed to accommodate Rodriguez's difficulty interacting with others; the ALJ's credibility determination was contrary to Agency policy and case law; the ALJ failed to properly evaluate medical source opinions; the ALJ failed to properly evaluate Rodriguez's migraine headaches; and the ALJ's functional capacity assessment contravenes SSR 96-8p. The Court addresses those arguments in turn.

### A) The ALJ did not properly assess Rodriguez's difficulties in maintaining concentration, persistence, or pace.

Rodriguez first argues that the ALJ erred by failing to include a specific finding as to the degree of his limitation in "maintaining concentration, persistence, and pace."

When analyzing whether a claimant has a medically determinable mental impairment and whether that impairment causes functional limitations, the ALJ performs what is known as a "special technique" (described in 20 C.F.R. § 404.1520a). The special technique requires the ALJ to first evaluate the claimant's "pertinent symptoms, signs, and laboratory findings" to determine whether the claimant has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). Then, if the claimant has a medically determinable mental impairment, then the ALJ rates the degree of functional limitation in four broad areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *Id.* § 404.1520a(c)(3). Those functional areas are known as the "B criteria." See 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00 *et seq.*

The first three functional areas are rated on a five-point scale of none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). The final functional area is rated on a four-point scale of none, one or two, three, and four or more. *Id.* The ratings in the functional areas correspond to a determination of severity of mental impairment. *Id.* § 404.1520a(d)(1). If the ALJ rates the first three functional areas as none or mild and the fourth area as none, then generally the impairment is not considered severe. *Id.* Otherwise,

the impairment is considered severe, and the ALJ must determine whether it meets or is equivalent in severity to a listed mental disorder. *Id.* § 404.1520a(d)(2). If the mental impairment does not meet or is not equivalent to any listing, then the ALJ will assess the claimant's RFC. *Id.* § 404.1520a(d)(3). The ALJ must document use of the special technique by incorporating the pertinent findings and conclusions into the written decision. *Id.* § 404.1520a(e)(2).

In this case, the ALJ analyzed Rodriguez's impairments under Listing 12.04 (Affect Disorders) and Listing 12.06 (Anxiety-Related Disorders). The ALJ assessed the B criteria of those disorders as follows:

> With respect to activities of daily living, the claimant has moderate restriction. The claimant alleges restrictions of activities of daily living, but these alleged restrictions appear to be due more with back pain than any purported depression (*he tries to do the best he can*). In social functioning, the claimant has moderate difficulties. The claimant suggests that he is isolative but he also reports listening to Spanish radio, going to Church, and taking a walk every now and then. Additionally, the claimant's treatment records reflect that he gets along well with treating personnel. With respect to concentration, persistence and pace, during the consultative exam, the claimant had difficulty performing serial sevens and calculations, but he had good recall and both his recent memory and remote memory were reported to be intact.

(R. 21). As can be seen, the ALJ neglected to assign the third criterion (Rodriguez's "concentration, persistence and pace") a rating on the five-point scale. Rodriguez now argues that the ALJ's failure to make a factual finding about that specific limitation warrants reversal under 20 C.F.R. §§ 404.1520a(e)(2), 416.920a(e)(2) ("The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.").

The Court disagrees. Although it is true that the ALJ did not rate Rodriguez's "concentration, persistence and pace," that error is harmless. Even if the ALJ had found that Rodriguez's limitation was "marked," the B criteria would not be satisfied because a claimant's impairments must cause at least *two* "marked" limitations (or one marked limitation and repeated episodes of decompensation). The ALJ did not find that any other B criterion was marked (or that there were repeated episode of decompensation). Thus, the result would have been the same no matter what rating was assigned to Rodriguez's "concentration, persistence and pace." The ALJ's error was harmless.

### B) The ALJ failed to accommodate Rodriguez's difficulty interacting with others.

Rodriguez next argues that the ALJ erred by first finding that Rodriguez has moderate limitations in social functioning and then failing to include that limitation in her RFC assessment. The government concedes that the ALJ failed to include the limitation in the RFC assessment, but argues that the ALJ's failure should be excused because she obviously considered that limitation in reaching her conclusion.

ALJs evaluate a claimant's residual functional capacity as a means of assessing whether a claimant can work, despite their impairments. 20 C.F.R. § 404.1520(a)(4)(v). As part of that assessment, ALJs often rely on the testimony of a vocational expert ("VE"). Commonly, the ALJ will pose a series of hypothetical questions that describe the claimant's conditions and limitations, and the VE will testify to the number of jobs a person with those limitations could perform. An ALJ's hypothetical questions to a VE must incorporate all

limitations that the ALJ has accepted as credible. *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002)("Hypothetical questions posed to vocational experts ordinarily must include *all* limitations supported by medical evidence in the record")(emphasis in original)); *Schmidt v. Astrue,* 496 F. 3d 833, 846 (7th Cir. 2007)(affirming Commissioner's denial of benefits where ALJ's hypotheticals did not include certain impairments found to be incredible). The rule ensures that the VE does not refer to jobs that the applicant would not be able to perform because the expert did not know the full range of the applicant's limitations. *Cass v. Shalala,* 8 F.3d 552, 555–56 (7th Cir. 1993).

In this case, the ALJ found that Rodriguez has moderate limitations in social functioning (R. 21), but did not include that limitation in hypothetical questions posed to the VE (R. 56-57). Thus, the VE's testimony about the availability of jobs suitable for Rodriguez did not account for his trouble with social functioning. This error, combined with the one discussed below, necessitates remand.

### (C) The ALJ's credibility determination is contrary to Agency policy and case law.

Rodriguez argues that the ALJ erred in concluding that Rodriguez was not credible in describing the extent of his impairment because she (1) based the credibility decision on the objective medical evidence without properly assessing the many other factors mandated by SSR 96-7p, and (2) she made factual errors in assessing the objective medical evidence. The Commissioner responds that ALJ credibility determinations are entitled to considerable deference and should not be rejected unless "patently wrong." (Dkt. 31 at 13).

The Commissioner does not specifically respond to claimant's contention that the ALJ made factual errors in evaluating the medical evidence.

Generally, an ALJ's credibility assessment is afforded special deference because the ALJ is in the best position to see and hear the witness and determine credibility. *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000). When reviewing an ALJ's credibility determination, this Court is limited to examining whether the ALJ's determination was "reasoned and supported," *Elder v. Astrue,* 529 F.3d 408, 413–14 (7th Cir. 2008) (citations omitted), and will overturn the determination only if it is "patently wrong." *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). Credibility determinations "based on errors of fact or logic" are not binding on courts. *Allord v. Barnhart,* 455 F.3d 818, 821 (7th Cir. 2006). In analyzing an ALJ's opinion for such error, we give the opinion a "commonsensical reading rather than nitpicking at it." *Castile v. Astrue,* 617 F.3d 923, 929 (7th Cir. 2010) (affirming Commissioner's denial of benefits).

In this case, Rodriguez contends that the ALJ concluded that he lacked credibility based on errors of fact or logic. The Court agrees. First, the ALJ found that one of Rodriguez's chief complaints of physical impairment—numbness in the left leg—was not credible because "there are no findings of radiculopathy to support the claimant's complaints of leg numbness." (R. 23). Radiculpathy refers to disorders of the spinal nerve roots. The problem with the ALJ's assertion is that the Agency's consulting examiner, Dr. Carlton, noted evidence of altered sensation in the left calf and left foot and

diagnosed left sided sciatica. (R. 362). Sciatica is a type of radiculopathy. Thus, the ALJ's conclusion that there was "no finding[] of radiculopathy" is not correct. Second, and relatedly, the ALJ erred in concluding that "decreased range of motion of the lumbar spine" was the only clinical findings to come out of the consultative examination, which would support Rodriguez's complaints of back pain and leg numbness. In fact, the consultative examiner also noted that Rodriguez suffers from a degenerative disc disorder with disc herniations. Thus, it was an error of logic to conclude that Rodriguez's complaints of back pain and leg numbness were not entirely credible because the consultative examiner noted *only* decreased range of motion of the lumbar spine.[2]

**V. Conclusion**

For the reasons stated above, and pursuant to 42 U.S.C. § 405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R:

Dated: April 24, 2013

MARY M. ROWLAND
United States Magistrate Judge

---

[2] Because the errors identified in subsections (B) and (C) mandate remand, the Court does not address Rodriguez's remaining arguments.